**Robert WEBB, et al., Plaintiffs.**

v.

**MISSOURI PACIFIC RAILROAD COMPANY, et al., Defendants.**

**No. LR–75–C–189.**

United States District Court,
E. D. Arkansas, W. D.

Aug. 13, 1982.

John W. Walker, Richard Quiggle, Little Rock, Ark., for plaintiffs.

Walter Paulson, III, Friday, Eldredge & Clark, Little Rock, Ark., for Missouri Pacific.

Edward J. Hickey, Jr., Washington, D.C., M. J. Probst, Pine Bluff, Ark., for Union defendants.

W. Dent Gitchel, Little Rock, Ark., Thomas A. Woodall, Rives, Peterson, Pettus, Conway, Elliott & Small, Birmingham, Ala., for United Transp. Union.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

Currently pending before the Court is plaintiffs' motion for reconsideration of the order of February 11, 1980, denying plaintiffs' motion for class certification. Plaintiffs' motion is based on the following directive of the presiding trial judge at the time, Honorable Richard S. Arnold, now United States Court of Appeals Judge for the Eighth Circuit:

"You may, of course, renew your motion for class certification, or file a motion for reconsideration of the denial...."

Plaintiffs' supplemental motion for class certification was filed on April 1, 1980. On March 16th, 17th and 18th, 1981, the Court heard testimony from approximately thirty witnesses in support of plaintiffs' motion.

It is settled that in order for a suit to be maintained as a class action, each of the four elements designated under Rule 23(a) of Fed.R.Civ.P. must be established by the moving party. If the moving party falls short in establishing any one of the requirements, the Court must deny the request for class certification.

After considering the memoranda submitted by the parties in support of their respective positions, the pleadings, testimony of the witnesses, as well as the Congressional purpose behind the adoption of the 1964 Civil Rights Law, of which Title VII is a part, namely, "to protect employees from any form of disparate treatment because of race, color, religion, sex or national origin", the Court is persuaded that this action should be certified as a class action conditionally as to Missouri Pacific Railroad Company and International Association of Machinists and Aerospace Workers District No. 15, but class certification should be denied as to the remaining defendant unions.

Inasmuch as plaintiffs are challenging Missouri Pacific's practices and policies relating to hiring, promotion, salary and termination [1] on a division-wide basis, thus involving several departments, the Court is persuaded that a class division should be established into (a) applicants, (b) mechanical, (c) maintenance-of-way and (d) transportation subclasses. However, it is plain that each subclass and its representative must meet the standards of Rule 23(a).

Plaintiffs initially requested that a class be certified that would embrace applicants, present and former employees of Missouri Pacific in Arkansas and possibly certain parts of the States of Missouri and Louisiana. Such a class would have necessarily involved several divisions and districts of Missouri Pacific. It is apparent that such a class would involve a large geographic area and would, indeed, create a management problem. Consequently, plaintiffs suggested, during the certification hearing, that the class should be limited to Missouri Pa-

---

1. Plaintiffs' complaint contains the following allegations:

Defendant has discriminated against black persons on the basis of race with respect to hiring, job assignments, pay, promotions, discharges, demotions, layoffs, and other terms and conditions of employment.

The defendant maintains a system of segregated and racially identifiable departments and job classifications.

Managerial, executive, clerical, and supervisory employees are selected according to no predetermined or objective standards, in a selection process that serves to preserve those classifications as largely or wholly white.

Employees of the defendant railroad are selected for promotions and transfer from one job classification to another without reference to predetermined or objective standards, in a selection process that serves to allow white employees to reach higher-paying and more desirable job assignments more readily than blacks similarly situated.

cific's operations in North Little Rock, Arkansas, and allied operations—the maintenance-of-way department and the Arkansas division. These operations are in close proximity to each other and will not, seemingly, present a management problem for the Court. Therefore, the subclasses defined herein at the North Little Rock facility also encompass the allied operations—the maintenance-of-way department and the Arkansas division.

In the event it later appears that any subclass is not in fact so numerous as to make joinder impracticable, the Court will entertain a motion to decertify that subclass as a class action.

## I.

### STANDING OF SOUTHWEST WORKERS FEDERATION AS A REAL PARTY IN INTEREST

■ Southwest Workers Federation (Federation), a party plaintiff in this action, is a coalition of local organizations in Arkansas, Louisiana, Texas and Oklahoma organized for the purpose of assisting minorities and females in achieving equal employment opportunities. Federation was initially sponsored by the American Friend Service Committee of Philadelphia, Pennsylvania, and has received grants from the Equal Employment Opportunity Commission (EEOC) and the Catholic Church for the purpose of implementing its objectives. The Arkansas Federation was organized approximately eight years ago. Federation strongly supports plaintiffs' request for class certification and also seeks to serve as a class representative.

Charles E. McFadden, spokesman and Regional Director for Federation, filed a charge of discrimination with EEOC on June 28, 1974, against Missouri Pacific Railroad and International Association of Machinists and Aerospace Workers, District # 15 (IAMAW), alleging "continuing" racial discrimination in employment at Missouri Pacific's North Little Rock facility.

The complaint specifically stated:

"I wish to file this charge *on behalf of the Negro employees, past, present & future, of the Mo. Pacific Railroad,* as the Regional Director of the Southwest Workers Association. I have personal knowledge of the discriminatory acts of this employer. I have listed the specific complaints in the attachments to this charge of discrimination form, as well as the identity of the aggrieved employees on whose behalf I file this charge." (Emphasis added)

The discriminatory acts designated on the attachment are:

"The above-named employer has *discriminated against me* and other black employees as well as applicants for employment and past employees because of race, based upon the following acts and conducts among others:

1. The company does not hire blacks on the same basis as whites or in proportion to their numbers in population.

2. The company does not hire blacks for office, clerical, professional or managerial positions.

3. The company does not promote blacks on equal basis.

4. The company has historically, paid blacks less than whites for equal or comparable work and responsibilities. Some of the effects of this practice has caused present black employees to suffer economic discrimination.

5. The company denies supervisory opportunities to blacks.

6. This company summarily suspends or terminates blacks for offenses which are ignored when they are committed by white employees.

By these acts and the totality of their employment practices, *this company discriminates against me and other blacks because of race on hire,* tenure, promotion and all other aspects of the terms and conditions of employment." (Emphasis supplied)

Defendants vigorously challenge the standing of Federation as a party in interest to either file a charge of discrimination with EEOC or to serve as a party-plaintiff

or class representative in these proceedings. Among other things, defendants contend that Federation has no funds currently on hand and, furthermore, has had no independent source of income since 1977; that it is a loosely organized group with no permanence or stability; and, in fact, is nothing more than a "shoestring" operation. Moreover, the defendants allege, that while Mr. McFadden filed the charge of discrimination with EEOC on behalf of certain named parties, these parties are no longer connected with this lawsuit and, as a consequence, that charge of discrimination is not sufficiently broad enough to encompass the claims made by plaintiffs and the purported class in this lawsuit.[2]

Inasmuch as the timely filing of a charge of discrimination with EEOC is a prerequisite to bringing a Title VII action in federal court, the standing of Federation to file the charge of discrimination with EEOC is crucial in these proceedings since it is not clear whether plaintiffs individually filed a charge of discrimination with EEOC against Missouri Pacific and, indeed, it is undisputed that plaintiffs did not file a charge of discrimination against any union.[3]

It is unquestioned that a discrimination charge may be filed with EEOC by any person claiming to have been discriminated against or by others on behalf of any aggrieved person. 42 U.S.C. § 2000e–5(a) provides:

> "The term 'person' includes one or more individuals ... associations, corporations ... unincorporated organizations ..."

The requirements of standing for the purpose of enabling one to initiate a discrimination action have been liberally construed. *Arkansas Ed. Ass'n v. Board of Ed., Portland, Ark. Sch. Dist.,* 446 F.2d 763 (8th Cir. 1971); *Smith v. Board of Education of Morrilton Sch. Dist. No. 32,* 365 F.2d 770 (8th Cir. 1966); *Senter v. General Motors Corporation,* 532 F.2d 511 (6th Cir. 1976); *Schoeppner v. General Tel. Co. of Pa.,* 417 F.Supp. 453 (W.D.Pa.1976).

In holding that the Arkansas Teachers Association had standing in a class action, the Court of Appeals made the following comment in *Smith v. Board of Education of Morrilton Sch. Dist. No. 32, supra:*

> We are not convinced that this standing is to be defeated, as the defendants argue, because ATA is not itself, technically, an individual member of a class. Certainly a class action, under Rule 23(a), must be brought by a member of the class.... But to argue that ATA here is not a member of the class for which relief is sought is, we think, but another way of arguing the question whether ATA is a real party in interest.... Having held that ATA is a proper party in this latter respect, we think it follows that it is not to be dismissed from the case because of Rule 23(a).

While the evidence reflects that Federation conducts its affairs in a rather informal manner and is characterized as a "shoestring operation", it is clear from the record that Federation has received substantial funding from EEOC, the Catholic Church and the American Friend Service Committee. The Catholic Church alone contributed approximately $30,000.00 to Federation in an effort to assist it in the implementation of its goals in achieving equal employment opportunities for minorities. Federation

---

2. The aggrieved individuals specifically named in the EEOC charge are C. D. Trent, Eddie Haney, Archie Mitchell, Alfred Brown and H. Brown. These individuals were party-plaintiffs in an action styled *Broadnax, et al. v. Missouri Pacific* involving a class action that was brought by and on behalf of the older and long-time black employees of Missouri Pacific's North Little Rock facility. Most of the class members in *Broadnax,* like Broadnax himself, had been employed at the railroad for twenty-five years or more. *Broadnax* has virtually no impact on the instant proceedings. However, the Court will address the impertinence of *Broadnax* hereinafter.

3. Charles Abraham filed his action against Missouri Pacific on September 28, 1978, after receiving his Right-to-Sue letter from EEOC on June 28, 1978. Abraham did not name any unions in his charge of discrimination. Abraham's action was subsequently consolidated with the instant action. The original action was filed June 25, 1975.

has been directly involved in employment discrimination lawsuits in Arkansas either as a party-litigant or in encouraging minorities and females to aggressively challenge discriminatory practices. For example, Federation was directly involved in lawsuits initiated against American Airlines, Reynolds Aluminum, Arkansas Power & Light Company, Coca-Cola Bottling Company, International Paper Company and Alcoa Aluminum.

The current board members of Federation, Arkansas Unit, are Grover Richardson, Pat Stiggers, Doyle Green and Daniel Washington, reputable citizens of Pulaski County, Arkansas. For example, Mr. Richardson is an employee of Worthern Bank and Trust Company and is a member of the Arkansas General Assembly.

Charles E. McFadden, who is a member of one of the subclasses identified below, is a member and official of Federation as well as the following class members: Danny Washington, Carl Mathis Blackmon, Lawrence Barbie and Reginald Abernathy.

The Court is persuaded that the nexus between Federation, the plaintiffs and the purported class is sufficient to establish standing for Federation to act in representative capacity in the EEOC and these proceedings. The central interest to all concerned is the elimination of the purported racial employment practices maintained by defendants. See NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

Missouri Pacific's argument that the charge of discrimination filed by Federation with EEOC was not broad enough to encompass the plaintiffs and the purported class in these proceedings is not convincing. The charge states specifically that the complaint was filed "on behalf of the Negro employees, past, present, and future, of the Missouri Pacific Railroad." The attachment provides:

> "The above-named employer has discriminated against *me* [Charles E. McFadden, Federation's Regional Director] and other black employees as well as applicants for employment and past employees because of race . . . "

Limiting the scope of the EEOC charge, as requested by defendants, to Trent, Haney, Mitchell, Alfred Brown and H. Brown, the *Broadnax* plaintiffs, would unduly restrict the scope and breadth of the charge. Indeed, it would exclude Charles E. McFadden who filed the charge in his own behalf and in behalf of "Negro employees, past, present and future." Furthermore, it is settled that the factual allegations contained in an EEOC charge determine the scope of the charge for the purpose of subsequent action in federal court rather than the notice of discrimination contained in the charge.

## II.

### MISSOURI PACIFIC RAILROAD APPLICANTS

#### A. Numerosity.

The first requirement of Rule 23(a) provides that members of the purported class be "so numerous joinder . . . is impractical." There is no question that this subclass meets this standard. The evidence offered by plaintiffs identifies eleven blacks who made application for employment at Missouri Pacific and were not hired. Moreover, Missouri Pacific offered into evidence its applicant flow logs dating from 1977 through 1980, which reflect that during this period 1,141 blacks made application for employment while 246 were hired. It is clear that there exists an identifiable class too numerous for joinder.

#### B. Commonality.

Rule 23(a)(2) provides that a class action may be maintained where "there are questions of law and fact common to the class."

Plaintiffs, in an effort to establish common questions, offered testimony to the effect that Missouri Pacific has deprived blacks of equal employment opportunities by engaging in practices that affect the applicant class in a general discriminatory manner, thus creating class issues as opposed to individual issues. In this setting,

it is plain that the common question to be resolved is whether Missouri Pacific has engaged in discrimination against the applicant class. Significantly, all of the applicant class members are black, all purportedly made application for employment and were qualified, and after they were rejected, Missouri Pacific employed white applicants who possessed the same qualifications as the designated class. The pivotal question at this juncture in the proceedings is not whether Missouri Pacific is guilty of discrimination as alleged by the applicant class, but whether there are common questions of fact involved. Plaintiffs are not required to establish a *prima facie* case of liability in order to establish the prerequisite of commonality. Missouri Pacific, on the other hand, contends its applicant flow logs clearly demonstrate that black applicants were hired in substantial numbers and at a rate virtually equal to that of white applicants. It is clear that during the liability phase of this proceeding, the Court must resolve the issues of fact and law created by the position taken by plaintiffs and Missouri Pacific. In other words, the common question of law and fact is does the purported discrimination exist? The Court is persuaded that the requirement of commonality has been met.

## C. Typicality.

Under Rule 23(a)(3), a class action may be maintained if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." In other words, the plaintiff representative must have suffered discrimination similar to that suffered by the alleged class although it is not necessary that such discrimination be identical to that of the class.

In *Wright v. Stone Container Corporation,* 524 F.2d 1058 (8th Cir. 1975), the Court of Appeals made the following pertinent observation:

> "[T]he typicality requirement of Rule 23(a)(3) obligates the class representative to at least demonstrate that there are other members of the class who have similar grievances...."

The claim of Robert Webb, plaintiff herein, like that of all class members, is of racial discrimination. Webb, as well as Billy Booth, Ricky McFadden, Ruby McFadden, William McFadden and Mel Johnson, applicants for employment, testified that applications were made for employment with Missouri Pacific and these requests were pursued diligently without success. While a substantial number of the applicant subclass members are unknown, it is the contention of plaintiff Webb that the claims of the alleged class are similar to his claims. Missouri Pacific's applicant flow logs would place this number at approximately 800 blacks. The Court is persuaded that the standard of typicality has been established.

The standard of adequacy will be discussed below since the position taken by the Court on the requirement of adequacy as it relates to applicants applies with equal force and effect to the remaining subclasses established.

The following class of applicants is certified with plaintiff Robert A. Webb and Federation serving as representatives of said class:

> All black persons who applied for employment in any of defendant's North Little Rock facilities, who were qualified and who applied within 180 days of June 28, 1974, for purposes of Title 42 U.S.C. § 2000e or within three years of June 25, 1975, for purposes of Title 42 U.S.C. § 1981, and who were denied employment because of their race.

## MECHANICAL DEPARTMENT

### A. Numerosity.

The mechanical department consists of the following crafts: laborer, crane operator, carman, boiler maker, blacksmith, electrician, sheet metal, and machinist. There are approximately 772 persons employed in the mechanical department and of this number approximately 123 are black. Six of the eight crafts have semi-skilled and skilled positions. The laborer craft has no skilled positions and is the basic entry level job. It is the contention of the plaintiffs that "blacks are almost totally excluded

from the skilled crafts, being limited to the laborer craft."

Plaintiffs Abernathy, Douglas and Abraham, have identified twenty-five blacks in addition to themselves who claim that they have been discriminated against in promotion, job assignments, terms and conditions of their employment and transfers. Plaintiffs further contend that "as the EEO–1 reports make it clear, in no year since 1966 have there been less than 120 blacks" in the mechanical department.

The Court is of the view that there exists an identifiable class too numerous for joinder and, accordingly, the requirement of numerosity has been established.

### B. Commonality.

It is the contention of the plaintiffs that on the basis of their race, Missouri Pacific has discriminated against the purported class in the terms and conditions of employment, including job assignment, transfers, promotions and termination. The Court is persuaded that there are common questions of law and fact involved for it is plain that the common fact question to be resolved is whether Missouri Pacific practices racial discrimination in termination, transfers and job assignments.

### C. Typicality.

The observations made by the Court relative to common questions of fact and law support the standard of typicality. Moreover, the record reveals that in addition to the plaintiffs, the following individuals have been identified as other blacks who have been denied promotions and transfers to better and higher paying positions because of racial policies and practices: Agnew, Beavers, Fitzpatrick, Gibson, Johnson, Lewis, Newman, Tippin, Wesley, Cecil Williams, Sabb, O'Neill, Moten, Morris, Charles Johnson, William Benton, Burnham, Gaines, Gibson, Guiden, Rowlette, Thomas, Henry and Watson. The Court is persuaded that the thrust of the purported claims of plaintiffs and the alleged class is an alleged articulated policy and pattern of racial discrimination aimed specifically at black employees within the mechanical department of Missouri Pacific. Accordingly, the Court finds that the standard of typicality has been met.

The following subclass is certified:

All present and former black employees in the North Little Rock shops who have claims of discrimination concerning the terms and conditions of their employment, including job assignments, transfers, promotions or terminations, and who were employed 180 days prior to June 28, 1974, for purposes of 42 U.S.C. § 2000e or who were employed three years before June 25, 1975, for purposes of 42 U.S.C. § 1981, and who were discriminated against based on their race.

This subclass is represented by the Federation and plaintiffs Douglas and Abraham.

### THE MAINTENANCE–OF–WAY

### A. Numerosity.

The maintenance-of-way department of the North Little Rock Shop and the Arkansas Division are responsible for repairing and maintaining the track and road beds within their respective jurisdictions. Employees in both divisions are stationed in North Little Rock, Arkansas. There are approximately 466 employees in this department, of which approximately 130 are black. There are 150 trackman positions and eighty-eight of these are filled by blacks, or 58% of the track work force. Danny Washington who has a personal claim, and plaintiff Franklin have identified approximately sixteen other blacks who have claims for the denial of promotions because of Missouri Pacific's alleged racial policies. Also the testimony reflects that between 1972 and 1975, there has been a substantial turnover in black employees in this department. For example, between 1972 and 1975, the number of black employees declined by forty individuals. While the testimony has actually identified approximately eighteen blacks who have claims of discrimination, the testimony also reflects that there are many other blacks who have similar claims. The Court, therefore, finds that the standard of numerosity has been established for this proposed subclass.

## B. Commonality.

The basis of the complaints registered in this department is the application of Missouri Pacific's alleged racial policy to blacks relative to the terms and conditions of employment, transfers and promotions. While some of the factual matters may vary from class member to class member, it is apparent to the Court that each alleged member contends that the injury he has sustained is predicated on race. Indeed, the common liability question is whether Missouri Pacific maintains a racial policy towards its black employees who seek transfers to better paying positions.

## C. Typicality.

The Court is of the view that the evidence establishes that there are approximately eighteen blacks who have been named and other unknown blacks who have suffered the same type of injury pertaining to the lack of realistic and forthright opportunities to transfer to better paying jobs and to acquire promotions in the maintenance-of-way department because of racial discrimination. Accordingly, the standard of typicality has been met. The following subclass is hereby created:

> All black persons who are or have been employed in the maintenance-of-way department of the North Little Rock terminal or the Arkansas terminal within 180 days of June 28, 1974, for purposes of 42 U.S.C. § 2000e or within three years of June 25, 1975, for purposes of 42 U.S.C. § 1981 and who claim they were discriminated against on the basis of their race in terms and conditions of their employment, in transfers and in promotions.

The representatives for this subclass shall be plaintiff Franklin and the Federation.

## TRANSPORTATION

### A. Numerosity.

The transportation department involves jobs within both the North Little Rock and Arkansas Divisions. Employees in these divisions are stationed in the North Little Rock facility. There are two lines of progression in this department, namely, engine service which is comprised of the fireman-engineer line of progression and train service which is comprised of the switchman-conductor line of progression.

In 1978, there were a total of 1,000 individuals constituting the work force in this department and of this number, approximately 120 were black. It is the contention of the plaintiffs that it is the practice and custom of Missouri Pacific to permit blacks to obtain jobs in the transportation department by transfer only, which is, purportedly, frequently denied. On the other hand, whites are permitted either to transfer freely or hired with no previous railroad experience. While it is the further contention of the plaintiffs that the number of persons seeking transfers has been quite numerous, the plaintiffs Roy Perkins and Sidney Williams, employees of the transportation department, have identified approximately ten other black employees who have similar claims, including improper termination or discharge based upon racial factors. It is clear that there are numerous unnamed blacks who are now employed in the department or were formerly employed that have similar claims and accordingly, the Court is of the view that this subclass is so numerous that joinder of all members would be impracticable. The requirement of numerosity has been met.

### B. Commonality.

The common questions of fact and law involved here relate to the contention that black persons have been unlawfully denied the opportunity to transfer into the transportation department because of their race; and if ultimately successful in obtaining jobs in the transportation department, blacks have been further discriminated against in terms and conditions of their employment and in numerous cases have been unlawfully terminated. The defendant, Missouri Pacific, on the other hand denies any such purported practices and, accordingly, the Court is of the view that there are common questions of fact and law presented which must be resolved in the course of a trial.

C. Typicality.

Plaintiffs Sidney Williams and Roy Perkins have identified approximately twelve other blacks and numerous unidentified blacks whom they feel have been discriminated against in terms of employment, promotion and termination. The Court is of the view that plaintiffs' claims are typical of the claims of the purported subclass members and that the standard of typicality has been established.

The following subclass is certified:

All black persons who are, who sought to be, or who have been employed in the transportation departments of North Little Rock terminal or Arkansas Divisions within 180 days prior to June 28, 1974, for purposes of 42 U.S.C. § 2000e or three years prior to June 25, 1975, for purposes of 42 U.S.C. § 1981 and who have been discriminated against because of their race in seeking a transfer into the transportation department, or who have been discriminated against in the terms and conditions of their employment or who were discriminatorily discharged.

The representatives for this subclass are Sidney Williams, Roy Perkins and the Federation.

D. Adequacy of Representation.

Rule 23(a)(4) provides "the representative parties will fairly and adequately protect the interest of the class." Adequacy of class representation is vital for three essential reasons: (1) in order to assure that the interest of the absent class members is protected, (2) to afford finality to the orders and judgment of the Court entered in the class proceedings, and (3) to protect a defendant against inconsistent adjudications and the expense of defending several suits. It is clear that a class member whose interest is not adequately and fairly protected may not be bound by the adjudication of his rights in the class proceeding and may collaterally attack the judgment. *Gonzales v. Cassidy,* 474 F.2d 67 (5th Cir. 1973).

In Volume 2, Employment Discrimination, Larson, § 49.52(d), page 9B–132, appears the following relevant comment:

"If the named plaintiff has either demonstrated in the past or *is presently demonstrating a vigorous assertion of his rights* . . . so that there is no suggestion of or opportunity for collusion between him and defendant, he has a head start establishing adequacy of his representation. If in addition he can demonstrate that he holds no interest antagonistic or adverse to those held by the class, adequacy may be proven." (Emphasis added).

Missouri Pacific contends that plaintiffs are inadequate representatives for the purported classes. The defendant argues that the record clearly shows that plaintiffs failed to appear at depositions scheduled; plaintiffs have done virtually nothing in seven years to prosecute this lawsuit; some, if not all, plaintiffs failed to appear for pretrial or for the first class hearing; and plaintiffs have not complied with several orders of the Court dealing with discovery. Finally, defendant argues that plaintiffs have not even sought to educate themselves as to the identity of other applicants or either present or former craft employees with similar complaints through discovery or to learn about the railroad's hiring, promotion and transfer procedures.

The record reflects that Judge Arnold scheduled plaintiffs' initial request for class certification on February 11, 1980. During the hearing, Judge Arnold made the following observation:

"With respect to the motion for class certification this is the time for it to be decided, and if there was going to be any evidence presented this would be the day to present it. The Court sees no witnesses in the courtroom and *assumes that the motion is to be decided on the basis of the written submissions, and the entire file, together with the oral statements that the attorneys have made this morning."* (Emphasis supplied)

Judge Arnold denied plaintiffs' motion for class certification, but granted plaintiffs leave to renew their motion which was done within a reasonable length of time.

Relative to defendants' argument that the passage of time since the filing of this action, the failure to complete discovery and the absence of plaintiffs from certain pretrial proceedings establish plaintiffs' inadequacy to represent the class, the Court is persuaded that these factors in and of themselves do not render representation inadequate. The Court is of the view that much of the time that has elapsed since this action was instituted is not chargeable to plaintiffs or their counsel. The record plainly demonstrates that since the filing of this action, this case has been transferred to four different courts before reaching this Court. Moreover, the Court is fully aware that this case is one among many that has been listed, over the years, as a statistic in the backlog of cases in this district because of the lack of judges to deal with the civil and criminal dockets. Notwithstanding the long delay, plaintiffs have continued to press their claims when the opportunity was afforded them. The Court is also aware that within the past year, Richard Quiggle, Esq., a promising and energetic member of the bar of this Court, has associated in this case with lead counsel, John W. Walker, Esq., who for many years bore the burden of prosecuting a substantial number of all of the civil rights cases instituted in Arkansas, and therefore, the Court is confident that this case can be prosecuted to a conclusion without further delay.

Accordingly, the Court is unwilling to penalize the plaintiffs or the class for the time that has elapsed since this action was filed and does not find that plaintiffs are inadequate representatives because discovery is incomplete. Indeed, meaningful and comprehensive discovery could not be initiated and implemented until plaintiffs knew whether this action would ultimately proceed either as a class or an individual action.

Regarding the attorneys for the plaintiffs and the subclasses in this action, the Court finds that Messrs. John W. Walker and Richard Quiggle specialize in civil rights litigation and are recognized as leading civil rights lawyers in the State of Arkansas and have been involved in numerous class actions. Plaintiffs' attorneys have adequate experience and qualifications to assure the Court and the subclasses that they can conduct this litigation in a competent manner.

Finally, the Court does not envision any potential conflict arising either on the part of the various class representatives or the attorneys of record in the prosecution of this class action. The Court is persuaded that any possible conflicts that may have existed among the purported class members may have been overcome by the establishment of subclasses. However, if, during the course of the proceedings contemplated in this action, conflicts should develop, the Court will deal with these matters at that time.

E. Rule 23(b).

In addition to satisfying the standards of Rule 23(a), plaintiffs must also demonstrate that the nature of the proposed class action is within one of the subdivisions of Rule 23(b).

The relief requested by plaintiffs, as set forth in their complaint, may be briefly summarized as: (1) a declaratory judgment that the actions of defendants complained of violate the rights guaranteed under federal law, (2) an injunction enjoining defendant from maintaining policies, practices, customs and usages discriminating against black persons as a class because of their race, (3) and requiring defendant Missouri Pacific to revise hiring and job assignment practices which will redress defendants' past discrimination against black persons and insure that such practices will not occur in the future.

Rule 23(b) states in relevant part:

"An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

.    .    .    .    .

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole ..."

The Court is persuaded that these proceedings are appropriate under Rule 23(b)(2) inasmuch as this section is designed as a vehicle for civil rights suits directed as a class action which involve, as here, a request for declaratory judgment and injunctive relief.

## III.

### INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS; INTERNATIONAL ASSOCIATIONS OF MACHINISTS AND AEROSPACE WORKERS DISTRICT # 15 (IAMAW)

Plaintiffs contend that IAMAW represents employees in the mechanical department for collective bargaining purposes; that IAMAW and Missouri Pacific have discriminated against black employees in the department in terms of job assignments, pay, promotions, discharge, layoffs, transfers and "other terms and conditions of employment"; that defendants "maintain a system of segregated and racially identifiable departments"; and that IAMAW "maintain(s) a seniority system which operates so as to perpetuate racial classifications."

### A. Numerosity.

Charles Abraham, the proposed representative for the class, filed a separate suit against Missouri Pacific which has been consolidated with the lead case. Mr. Abraham did not sue any unions. However, he is a member of the subclass created for the mechanical department and can, therefore, benefit from the EEOC complaint filed by Charles McFadden against IAMAW. Mr. Abraham has named six other blacks as possible claimants, in addition to Diane Jones and Frankie Gaines, as having claims of discrimination against IAMAW.

The following named individuals were also identified as claimants against IAMAW: John Morris, Leonard Tippin, William Benton, Roy Perkins, M. W. Reddus, Kenneth Arnold and a "black girl who was discharged."

John Morris testified that he had complained to IAMAW representatives about the improper application and interpretation of the seniority roster for the machinist department and the negative effect that this application had on blacks endeavoring to transfer to better jobs, but was unable to get favorable responses from IAMAW; and there were other blacks who had similar complaints, including approximately twenty or more blacks who had received undeserved demerits for alleged "absenteeism from their jobs." The Court is persuaded that the requirement of numerosity has been established.

### B. Commonality.

The common fact question to be determined during the course of the trial as opposed to an individual issue is whether IAMAW, in serving as collective bargaining representative for the employees of the mechanical department, discriminates against black employees in its representative role in terms of job assignment, promotions, discharges, layoffs, maintenance of the seniority roster and in the prosecution or the failure to prosecute grievances registered by black employees against Missouri Pacific.

John Morris further testified:

A. Well, after I went into machinist craft, they hired a fellow eight months later, after I was working for the railroad, and he is ahead of me on the seniority roster.

Q. And he was hired eight months later?

A. He was hired eight months after I started to work there.

Q. Do you know that person's name?

A. I sure do.

Q. What is it?

A. M. W. Rose.

Q. What is he ahead of you on ...

A. On the seniority roster.

Q. How do you know ... do you know how that came to be?

A. No, I sure don't, I talked to the union about it and wrote letters, but I didn't get any consideration.

Q. Did you try and file a grievance about it?

A. Through the union, yes, but it never did get anywhere.

Q. Did they file a grievance for you?

A. No.

Q. Will you just describe ... do you find any difference Mr. Morris, in the working conditions for blacks and whites at the railroad?

A. I think so.

Q. Would describe the differences, please?

A. Well, as far as the working conditions, uh, like the jobs are concerned, and un, a incident recently about a month ago, uh, they passed out letters for absenteeism, but the letter wasn't clear what, as what, and the majority of the people in this department got letters, were black and even though blacks are the minority, but the majority got letters.

The requirement of commonality has been established.

### C. Typicality.

The Court is of the view that the evidence demonstrates that there are other members of the subclass who have similar grievances against IAMAW. Therefore, the standard of typicality has been established.

Roy Perkins, who was permitted to intervene as a party-plaintiff, testified that he had made numerous efforts to transfer from the mechanical department to train service, but his efforts were frustrated due to various reasons attributable to his race. For example, he stated that whites with less seniority were given priority in receiving transfers to train service; that while employed as a blacksmith in the mechanical department, he made several attempts to bid on jobs, i.e., drill press operator, but was outbid by whites with less seniority; and that a complaint was made to the chairman of his union, A. J. Daniels, but no action was taken. Mr. Perkins also testified that there were other blacks who were treated similarly.

John Morris testified that there were between twenty and thirty black employees in the mechanical department who had received unwarranted letters for alleged absenteeism.

The observations previously made by the Court relative to adequacy of representation and Rule 23(b) requirements apply with equal force and effect as to IAMAW.

The subclass designated for the mechanical department previously shall constitute the class definition applicable to IAMAW unless counsel, within ten days from the entry of this order, petition the Court to amend this designated class. Plaintiff Abraham and Federation shall constitute the class representatives against IAMAW. The class shall be limited to employees in the machinist craft, whom IAMAW was certified to represent.

### IV.

DEFENDANTS, BROTHERHOOD RAILWAY CARMEN OF THE UNITED STATES AND CANADA; BROTHERHOOD RAILWAY CARMEN OF THE UNITED STATES AND CANADA HARMONY LODGE # 114; INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS; INTERNATIONAL BROTHERHOOD OF FIREMEN AND OILERS; INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS; AND SHEET METAL WORKERS INTERNATIONAL ASSOCIATION

Plaintiffs have invoked this Court's jurisdiction pursuant to Title 42 U.S.C. § 2000e–5(f), and Title 42 U.S.C. § 1981. However, it is plain from the record that the only EEOC charge lodged against any union in this proceeding was the charge of Charles E. McFadden, dated June 28, 1977, as Regional Director of the Southwest Workers Association, against Missouri Pacific Railroad and International Association of Machinists and Aerospace Workers, Dis-

370

trict No. 15 in behalf of "The Negro employees, past, present and future, of the Mo. Pac. Railroad." It is settled that a charge before the EEOC is a jurisdictional prerequisite to a private suit under Title VII. *Bowe v. Colgate-Palmolive Company,* 416 F.2d 711 (7th Cir. 1969). The courts have found two possible exceptions to the requirement of filing an EEOC charge, namely, (1) when an additional defendant in federal court has sufficient notice of its alleged involvement in a racial practice because of its close relationship with a charged party, or if the defendant creates the confusion that resulted in plaintiff's failure to charge it properly before the administrative agency, and (2) where it is demonstrated that it would be futile to bring an EEOC charge. *Equal Employment Op. Com'n v. Rinella & Rinella,* 401 F.Supp. 175 (N.D.Ill.1975); *DeFigueiredo v. Transworld Airlines, Inc.,* 322 F.Supp. 1384 (S.D.N.Y., 1971). There is no evidence in the record supportive of a finding that either one or both exceptions apply. Moreover, plaintiffs have not asserted or relied upon an exception. Accordingly, plaintiffs' prayer for class certification as to the aforementioned unions is denied as to the Title VII claims.

Relative to Title 42 U.S.C. § 1981, the evidence is wholly deficient, not only from the standpoint of establishing the standard of numerosity as required under Rule 23(a), but is equally deficient in establishing the standards of commonality and typicality. For example, plaintiff Douglas testified that there were only three blacks who were members of the Carmen's union, including himself. Plaintiff Abernathy, the only other car department union member to testify, identified no other potential class members against the Carmen's union.

Relative to the Laborers' union, witnesses Retha Rowlette, Juanita Lewis, Diane Jones and James Williams identified only themselves as employees who were members of the Laborers' union (I.B.F. & O.). Moreover, both Juanita Lewis and Retha Rowlette testified that they had no complaints of racially motivated union conduct and that the union never refused to render

assistance when they solicited its services. It is clear that the burden is on the plaintiffs to establish Rule 23(a) requirements. *Smith v. Merchants & Farmers Bank of West Helena, Arkansas,* 574 F.2d 982 (8th Cir. 1978); *Taylor v. Safeway Stores, Inc.,* 524 F.2d 263 (10th Cir. 1975). Accordingly, no class will be certified as to the aforementioned unions and plaintiffs' motion will be denied as to these unions.

## V.

### THE BROADNAX CLASS

The Court is persuaded that inasmuch as a class action was instituted in January, 1973, against Missouri Pacific Railway Company and others involving defendant's North Little Rock facility, the Court should make the following observation in order to avoid any possible confusion or misunderstanding as to the scope of these proceedings. The prior litigation is styled *H. H. Broadnax, et al., v. Missouri Pacific Company, et al.,* Case No. LR–73–C–25. The class certified in *Broadnax* was:

> "All present and former black employees of the defendant Missouri Pacific Railway Company at its North Little Rock terminal who were hired prior to January 1, 1967, who were initially assigned as laborers, and who worked later than October 20, 1971."

Approximately seventy blacks constituted the class in *Broadnax.* No black who was a member of the *Broadnax* class is eligible for relief in the instant proceeding. Specifically, the class in *Broadnax* constituted those black employees who had accumulated twenty-five or more years of service with Missouri Pacific whose employment commenced before 1967, and employed initially as laborers and were still employed as late as 1971. It seems plain that any black who may have been entitled to relief under *Broadnax* may be precluded by reason of *res judicata* from seeking relief here.

IT IS ORDERED:

1. That plaintiffs' motion for class action certification is granted to the extent set out in this opinion; and,·

2. That the individuals and organizations are designated as class representatives, as indicated in this opinion; and,

3. That the issues in this class action proceeding shall be bifurcated with the issue of liability being scheduled for trial commencing May 9, 1983, at 9:30 a. m. o'clock.