## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellee,

v.

## PEAT, MARWICK, MITCHELL AND COMPANY, Appellant.

### No. 84–1869.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 18, 1985.

Decided Oct. 10, 1985.

929

Victor M. Earle, III, New York City, for appellant.

Peggy R. Mastroianni, Washington, D.C., for appellee.

Before LAY, Chief Judge, and JOHN R. GIBSON and FAGG, Circuit Judges.

FAGG, Circuit Judge.

Peat, Marwick, Mitchell & Co. (PM) appeals from an order of the district court requiring it to produce documents subpoenaed by the Equal Employment Opportunity Commission (EEOC). We affirm.

In May of 1982, the EEOC began investigating the retirement practices and policies of PM in an effort to determine whether the practices and policies are violative of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* In accordance with the investigatory powers granted it under section 7(a) of the ADEA, 29 U.S.C. § 626(a), the EEOC subpoenaed documents of PM bearing upon "the relationship of members to the firm and members vis-a-vis members" and documents relating to PM's retirement practices and policies.

After PM refused to comply with the subpoena, the EEOC initiated this enforcement proceeding in the district court. In response to the EEOC's application for an order to show cause why the subpoena should not be enforced, PM contended, among other things, that (1) the information sought by the EEOC is not relevant to any legitimate interests of the EEOC; (2) the EEOC's efforts to enforce the subpoena amount to an abuse of the court's process and are not in good faith; and (3) enforcement of the subpoena would violate various constitutional rights of PM and its members. The district court, 589 F.Supp. 534, ordered enforcement of the subpoena and also granted PM's motion to stay enforcement of the order to produce pending this appeal.

PM's primary argument on appeal is that the subpoena should not be enforced because the EEOC's investigation is not for a legitimate purpose authorized by Congress. The ADEA prohibits discrimination by an employer against an employee or prospective employee on the basis of age. *See* 29 U.S.C. § 623(a). PM contends that its partners are not employees under the ADEA but rather they fall within the definition

provided for employers in the Act, *see* 29 U.S.C. § 630(b). Thus, according to PM, the EEOC's investigation of the relationship of PM partners, as employers, to the firm and to each other and its investigation of the retirement practices and policies of the partnership is not for a legitimate purpose authorized by Congress.

The EEOC notes that "[a] determination of whether an individual is an employee and therefore covered by the protections in [the] ADEA should not center on the label which the organization has chosen to give to the position." *EEOC v. First Catholic Slovak Ladies Association,* 694 F.2d 1068, 1070 (6th Cir.1982), *cert. denied,* 464 U.S. 819, 104 S.Ct. 80, 78 L.Ed.2d 90 (1983). *See Zimmerman v. North American Signal Co.,* 704 F.2d 347, 352 and n. 4 (7th Cir.1983). EEOC maintains that it has subpoenaed the records of PM in an effort to determine whether individuals that PM classifies as "partners" fall within the definition of "employees" for purposes of the ADEA.

■ Congress has established the EEOC as the administrative body empowered to investigate violations of the ADEA and has given the EEOC subpoena power in order to carry out its investigations. The authority to investigate violations includes the authority to investigate coverage under the statute. *Donovan v. Shaw,* 668 F.2d 985, 989 (8th Cir.1982). It can no longer be disputed that "a subpoena enforcement proceeding is not the proper forum in which to litigate the question of coverage under a particular federal statute." *Id.* at 989. *See Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 214, 66 S.Ct. 494, 508, 90 L.Ed. 614 (1946); *Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943); *EEOC v. Roadway Express, Inc.,* 750 F.2d 40, 42 (6th Cir.1984); *EEOC v. Quick Shop Markets, Inc.,* 526 F.2d 802, 803 (8th Cir.1975). The initial determination of the coverage question is left to the administrative agency seeking enforcement of the subpoena. *Oklahoma Press,* 327 U.S. at 214, 66 S.Ct. at 508; *Endicott,* 317

U.S. at 509, 63 S.Ct. at 343; *Donovan,* 668 F.2d at 989; *Quick Shop Markets, Inc.,* 526 F.2d at 803. Often a coverage question cannot be resolved until the administrative agency has had an opportunity to examine the subpoenaed records. *Endicott,* 317 U.S. at 508–09, 63 S.Ct. at 343; *Donovan,* 668 F.2d at 989.

■ "The showing of reasonable cause required to support an application for enforcement of a subpoena duces tecum 'is satisfied ... by the court's determination that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry.'" *Donovan,* 668 F.2d at 989 (quoting *Oklahoma Press,* 327 U.S. at 209, 66 S.Ct. at 505–06). *See also United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964); *United States v. Morton Salt Co.,* 338 U.S. 632, 652–53, 70 S.Ct. 357, 368–69, 94 L.Ed. 401 (1950). The EEOC's investigation of PM is in an effort to determine whether PM's retirement practices and policies discriminate against individuals classified as employees for purposes of the ADEA. Thus, EEOC's investigation is for a legitimate purpose authorized by Congress. PM has not questioned the relevancy of the documents subpoenaed by the EEOC to a ·determination of this question.

PM also argues that the district court committed error in enforcing the subpoena because it is abusive, unreasonable, not in good faith, and violative of the constitutional rights of PM and its members. In this regard, PM argues that the EEOC has never made or attempted to make a showing that PM's partners may in fact be employees for purposes of the ADEA, or that it has reason to believe that PM's retirement practices and policies may be violative of the ADEA.

■ The EEOC is not required to make such a showing. As previously indicated, the EEOC must show that its investigation is for a legitimate purpose authorized by Congress and that the documents subpoenaed are relevant to its inquiry. *Oklahoma Press,* 327 U.S. at 209, 66 S.Ct. at

505–06. If this demonstration is made, the EEOC is entitled to the documents subpoenaed unless PM demonstrates that judicial enforcement of the subpoena would amount to an abuse of the court's process. *Powell*, 379 U.S. at 57–58, 85 S.Ct. at 254–55; *see United States v. Lask*, 703 F.2d 293, 297 (8th Cir.), *cert. denied*, 464 U.S. 829, 104 S.Ct. 104, 78 L.Ed.2d 107 (1983); *EEOC v. K–Mart Corp.*, 694 F.2d 1055, 1066 (6th Cir.1982). PM has presented no evidence of bad faith or an abuse of the court's process by the EEOC.

PM also argues that ordering production of the documents violates its constitutional rights. We decline to address this issue as it was not ruled on by the district court.

We affirm.

JOHN R. GIBSON, Circuit Judge, dissenting.

I am troubled with what the court does today. I do not believe either the statute or precedent allows today's result. Nor do I think such a result was intended or anticipated by Congress. I therefore respectfully dissent.

Congress enacted the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, to prevent employers from discriminating against their employees on the basis of age. 29 U.S.C. § 623. Congress authorized the Equal Employment Opportunity Commission (EEOC) to enforce the ADEA. The definitional section of the statute reflects the limitations Congress intended to set on the scope of the application of the ADEA. "Employee" is defined in 29 U.S.C. § 630(f), with certain specific exceptions not relevant here, as "an individual employed by any employer." "Employer" is defined in 29 U.S.C. § 630(b) as a person engaged in an industry affecting commerce, and in turn, "person" is defined as including a partnership. Peat, Marwick, Mitchell & Co. (PM) is a partnership. The question before us is whether the EEOC is empowered to investigate relationships among members of a partnership, a "person" and hence an "employer" within the definitions under ADEA. Con-

gress did not intend that ADEA govern relationships among partners nor did it authorize the EEOC to investigate such relationships.

The EEOC to the contrary contends that just because a business enterprise calls itself a partnership, and the participants in the enterprise call themselves partners, does not for purposes of the ADEA make it so. The EEOC perceives the issue as one of labels rather than legal relationships. The EEOC claims that only it has the authority to determine in the first instance whether the PM partners are partners for purposes of the ADEA. It has served the partnership with a subpoena duces tecum, requesting potentially sensitive partnership documents, to make this determination.

As the court today observes, it is settled that under *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946), the EEOC is authorized to make the initial determination as to who is covered within the definitions set out by the ADEA, and may subpoena documents for this purpose. This authority, however, has a significant limitation. Under *United States v. Powell*, 379 U.S. 48, 57, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), the EEOC "must show the investigation will be conducted pursuant to a legitimate purpose." PM is a partnership, an employer under the ADEA. I cannot agree that the EEOC investigation of the relationships among the PM partners is supported by a legitimate purpose.

The record before the district court makes clear that PM is a partnership. PM possesses the commonly accepted attributes of a partnership. Its partners make contributions to capital, share profits and losses, and vote on partnership matters. The partners must sign the partnership agreement and all partners must approve any amendments to the agreement. The entire partnership votes on candidates for admission. Partners must agree to devote all their professional time and attention to the partnership. The partnership files partnership information tax returns and distributes Form K–1 to its partners. The

partnership does not enter into employment agreements with any of the partners. The record clearly distinguishes the role of the PM partners from that of their employees.[1] Most significantly, the EEOC made clear in open court that it was "not contending that PM is a sham partnership." (Tr. p. 25)

The EEOC seems to suggest that despite this record, and apparently simply because PM has a large number of partners, some partners may be something less than partners. It argues that in a firm of 1,375 partners,[2] it is debatable whether those with a minute equity interest, or physically or otherwise isolated from effective participation in the management or control of partnership affairs, are partners within the meaning of the ADEA's statutory exemption for employers. It seeks to assert that some members of PM may be labeled partners, but for ADEA purposes are not.

We deal here not with labels but with acknowledged legal relationships. The subpoena expressly calls for documents bearing upon "the relationship of members to the firm and members vis-a-vis members." The EEOC's argument based upon the statutory definition of "employee" and "employer," and its conclusion that "it doesn't follow that a member of a partnership can never be an employee," (Brief p. 14) clouds and confuses the definitions in the statute. Its analysis creates a case in which an individual might at the same time be both employer and employee. The entire thrust of the ADEA is to protect employees in their relationship with their employers. There is no evidence in the language of the statute or its legislative history that Congress perceived a need to protect partners from one another. Nowhere does the ADEA even suggest that the EEOC should play a role in the relationships among partners.

Justice Powell's concurring opinion in *Hishon v. King & Spalding*, 467 U.S. 69, —, 104 S.Ct. 2229, 2236, 81 L.Ed.2d 59, 69 (1984), which deals with Title VII, confirms this view. As Justice Powell's opinion makes clear, Congress did not intend to extend Title VII to the management of a law firm by its partners or to characterize the relationship among partners as an "employment" relationship to which Title VII would apply. *Id.* at 69–70.[3] Title VII contains definitions analogous to those in the ADEA. The EEOC's investigation of PM thus runs directly at odds with *Hishon.*

Certainly *Oklahoma Press* and *Powell* sustain the view that questions of coverage may be determined in the first instance by the agency. But in this case coverage is a settled question of law. Furthermore, even if it is argued that a factual inquiry is relevant, the unique record in this case establishes the existence of a legal relationship falling outside the scope of the statute, a relationship that has been established and has been admitted not to be a sham. Under these circumstances, *Powell* dictates that the investigation be brought to a halt as not pursuant to a legitimate purpose and that production of documents not be compelled.

A further serious issue exists as to the breadth of the EEOC's subpoena. The permissible breadth of a subpoena is subject to fourth amendment reasonableness requirements, *Oklahoma Press*, 327 U.S. at 209, 66 S.Ct. at 505–06, which mandate that only those documents specifically relevant to the

---

**1.** Employees do not share profits, do not bear the risk of losses, and are not responsible for management of the firm's practice and offices. They may not sign the firm's name to a report or take part in the electoral process engaged in by the partners.

**2.** The shallow underpinnings of its position is best illustrated by a statement in the EEOC brief that PM may have 300 partners nationwide. (Brief p. 17 n. 13) PM readily admits and public information states that PM has some 1,375 partners. Such inaccuracy leaves me

questioning how thoroughly the agency has considered its case.

**3.** Other courts have considered both partnership and professional corporations as outside the scope of Title VII. *Burke v. Friedman,* 556 F.2d 867 (7th Cir.1977); *EEOC v. Dowd & Dowd, Ltd.,* 736 F.2d 1177 (7th Cir.1984). The EEOC attempts to distinguish these cases that involve small organizations. This overlooks the legal relationship which was the primary emphasis of the court in each of these cases.

**933**

stated inquiry need be produced. Here the stated purpose of EEOC's subpoena is to determine whether PM is covered by the ADEA. Yet it seeks documents that go not merely to coverage but to substantive questions of whether there are possible violations. Among the PM documents subpoenaed by the EEOC are those relating to PM's retirement practices and policies for its partners. These documents have no reasonable relevance to whether PM's partners are subject to the proscriptions of the ADEA.

This case presents the question of whether the EEOC has unlimited power to acquire all relevant records of a business entity that Congress did not place within the scope of the ADEA. PM is one among thousands of professional and business organizations employing the partnership form of legal structure. The court's decision today, therefore, has broad consequences and implicates serious concerns. The majority relies on *Oklahoma Press* without appreciating the careful balance the Supreme Court struck between the important public and private interests at stake. *Oklahoma Press* reflects a compromise between the public interests and the private interests "of men to be free from officious intermeddling, whether because irrelevant to any lawful purpose or because unauthorized by law, concerning matters which on proper occasion and within lawfully conferred authority of broad limits are subject to public examination in the public interest." 327 U.S. at 213, 66 S.Ct. at 508. As Justice Rutledge noted, "(o)fficious examination can be expensive, so much so that it eats up men's substance. It can be time consuming, clogging the processes of business." *Id.*

We deal here with a partnership that admittedly is not a sham. If a partnership is in fact something other than that form of organization, different principles apply. A distinctly different situation was involved in *Oklahoma Press* and the cases on which it relied, where Congress's commerce clause power brought enormous numbers of firms within the scope of the Fair Labor Standards Act. I cannot sanction this result which permits the EEOC broad powers to compel the disclosure of information from partnerships outside the scope of its statutory authority.

*Oklahoma Press* and *Powell* underscore the concern with improper investigatory activity. Here the EEOC specifically directs its efforts toward a partnership. In so doing, the EEOC steps outside the bounds of its investigatory authority established in 29 U.S.C. § 626(a). I would reverse and order that the subpoena be quashed.