**EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,**
Applicant,

v.

**SCHWAN'S HOME SERVICE,**
Respondent.

No. 09–84 (JRT/JSM).

United States District Court,
D. Minnesota.

March 8, 2010.

Jessica A. Palmer–Denig, Nicholas J. Pladson, U.S. Equal Employment Opportunity Commission, Minneapolis Area Office, Minneapolis, MN, for Applicant.

James B. Sherman, Kevin M. Mosher, Wessels Sherman Law Firm, Minneapolis, MN, for Respondent.

## ORDER

JANIE S. MAYERON, United States Magistrate Judge.

The above matter came on before the undersigned on November 4, 2009 upon the Equal Employment Opportunity Commission's Application for Order to Show Cause Why a Subpoena Should Not be Enforced [Docket No. 1].

Nicholas J. Pladson, Esq. appeared on behalf of the Equal Employment Opportunity Commission. James B. Sherman, Esq. appeared on behalf of Schwan's Home Service.

The Court, upon all of the files, records, proceedings herein now makes and enters the following Order.

IT IS HEREBY ORDERED that:

1. The Equal Employment Opportunity Commission's Application for Order to Show Cause Why a Subpoena Should Not be Enforced [Docket No. 1] is GRANTED. The Court finds that Schwan's Home Service has not shown cause for its failure to comply with the subpoena.

2. Schwan's Home Service is directed to comply with Subpoena No. CHMNA10–012 in its entirety. Schwan's Home Service shall provide the information sought by the subpoena no later than March 29, 2010.

### MEMORANDUM

## I. FACTUAL BACKGROUND

On June 19, 2007, Kim Milliren ("Milliren") filed a Charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that she had been subjected to discrimination by Schwan's Home Service ("Schwan's") on the basis of gender, sexual harassment and retaliation for having complained about harassment based on sex. Declaration of District Director John P. Rowe ("Rowe Decl."), ¶ 4(a) [Docket No. 4]; Rowe Decl., Ex. 1, p. 2 (copy of Charge of Discrimination 560–2007–01859). Specifically, Milliren set forth the following allegations in the Charge:

I was hired by the above referenced employer on or about November 16, 2007 to participate in the General Manager Development Program. During my employment, I was harassed, demoted, and informed that I would not graduate from the General Manager Development Program. On May 4, 2007, I was constructively discharged.

On or about March 27, 2007, Jeffery Moffis, Local General Manager, addressed me as "woman" two times. On or about March 28, 2007, Mr. Moffis laughed at me when I told him that I was not comfortable with him and customer service managers joking around about the offensive material that was emailed to local general managers by George VanOverbeke, District Manager. On or about April 5, 2007, I complained to Jim Pettry, facilitator, about the derogatory emails. On or about April 6, 2007, I complained to my direct supervisor, Sue Bary,[1] Vice President of Business Initiatives. On or about April 27, 2007, Mike Wells, Director of Training, told me that I was not demonstrating leadership skills, that I would not graduate, and that the best position they could offer me upon completion of the program was that of a customer service manager. On May 4, 2007, I resigned. I believe that I have been discriminated against on the basis of my sex, female, and in retaliation for having complained about harassment based on sex. This is in violation of Title VII of the Civil Rights Act of 1964, as amended.

Rowe Decl., Ex. 1.

During the course of its investigation of Milliren's Charge, the EEOC learned the following: Schwan's is a home delivery frozen food company based in Minnesota, and uses a General Manager Development Program ("GMDP") to train management candidates for placement into Location General Manager ("LGM") positions at its facilities nationwide. EEOC's Mem., p. 2 [Docket No. 2]. In 2006, Milliren applied for an LGM position at Schwan's, and on November 16, 2006, Schwan's extended her a conditional offer of employment as an LGM and she began the GMDP on February 19, 2007. *Id.* When Milliren began the GMDP, she was sent to Schwan's Meridian, Idaho facility and was assigned

---

1. Milliren spelled the last name of her direct supervisor as "Bary" in her Charge; Schwan's spelled it "Beary" in its position statement. *See* Rowe Decl., Exs. 1, 2. The Court will use Schwan's spelling.

to be mentored by Jeffery Moffis ("Moffis"), an LGM. *Id.*

According to the EEOC, Milliren identified several instances in support of her allegations. Milliren stated she was subjected to sexually derogatory comments and exposed to sexually explicit e-mails sent by a Schwan's vice president. *Id.*, p. 3. Milliren claimed that she complained, but was rebuffed by several upper-level managers and directors. *Id.* Rather than investigating her complaints, Schwan's began criticizing Milliren's performance and denied her graduation from the GMDP. *Id.* Shortly thereafter, Milliren resigned. *Id.* Additionally, Milliren indicated that she had complained to Moffis that a calendar containing a woman in a bikini was in the interview room. Rowe Decl., Ex. 5 (December 19, 2007 Request for Information to Schwan's.).

The EEOC also learned that Milliren and Patty Bakala were the only female participants in the GMDP at the time. *Id.* Allegedly, Beary, Vice President of Business Initiatives and Milliren's direct supervisor, told Bakala to "act more like the boys" to improve her performance. *Id.* Milliren stated that during her initial interviews with Schwan's, Beary told her that if she successfully completed the GMDP, she would be the second female Location General Manager of approximately five hundred Location General Managers at Schwan's nationwide. *Id.* Milliren also claimed that Moffis identified one female applicant for a Customer Service Manager position and said she was not suitable for the position because she would be leaving three children at home. *Id.*

On July 2, 2007, the EEOC served Schwan's with a Notice of Charge of Discrimination, in which it requested a statement of Schwans' position and copies of any supporting documentation. Rowe Decl., ¶ 4(b); Rowe Decl., Ex. 1, p. 3 (copy of Notice of Charge of Discrimination). Schwan's replied on August 13, 2007. Rowe Decl., ¶ 4(c); Rowe Decl. Ex. 2 (letter of position).

In its response, Schwan's pointed out that Milliren's claim that she was hired on November 16, 2006 was misleading; while Milliren was offered employment in November of 2006, with a scheduled start date of January 1, 2007, she did not start until February 19, 2007, at her own request. Rowe Decl., Ex. 2, pp. 8–9. Furthermore, Milliren's performance in the GMDP was rated as below average by Jeremy Kirby, her assigned training mentor, for the week of March 5, 2007, which was before the earliest date Milliren claimed any harassment had occurred. *Id.*, p. 9. After this rating, Beary, Milliren's direct supervisor, and Mike Wells, Director of Training, met with Milliren regarding her performance. *Id.*, pp. 9–10. Milliren's mentors noted some improvement, but indicated that she lacked demonstrated leadership ability, and Jim Pettry, Senior Learning Solutions Specialist, met with Milliren regarding her poor classroom performance. *Id.*, p. 10. Additionally, Beary and Wells met with Milliren on April 24, 2007 to inform her that she did not demonstrate the necessary leadership skills and was not ready to graduate from the GMDP program as scheduled. *Id.* Beary and Wells also informed Milliren they would continue to work with her for an additional three months to the end of the program. *Id.* Milliren contacted Beary on April 28, 2007 to inform her that she wanted to continue her training, but on April 29, 2007, called Beary and told her she had decided to voluntarily resign from the training program. *Id.*

During the same training period in which Milliren participated in the GMDP, Schwan's informed two male employees that they were not ready to graduate into an LGM position, while Patricia Bakala

successfully graduated from the program on June 7, 2007. *Id.*, p. 10.

Schwan's also acknowledged that on or about April 6, 2007, Milliren spoke with Beary and alleged that Moffis called her "woman," and provided Beary with copies of an email that Milliren found offensive. *Id.*, pp. 10–11. According to Schwan's, Beary informed Milliren that she would speak with Moffis' supervisor, Greg Martino, and Moffis was promptly admonished. *Id.*, p. 11. Milliren made no further complaints through the date of her resignation. *Id.*

On November 29, 2007, the EEOC served a Request for Information on Schwan's. Rowe Decl. ¶ 4(d); Rowe Decl., Ex. 3 (Request for Information to Schwan's). This request asked for the following information:

1. Provide a list of employees including name, gender and date of hire who attended every SHS General Manager Development Program from January 1, 2006 to the present.

2. Provide a list of employees who successfully completed the SHS General Manager Development Program from January 1, 2006 to the present. Include for each the person's name, gender, date of hire and date of attendance in the program.

3. Provide a list of employees who did not successfully complete the SHS General Manager Development Program from January 1, 2006 to the present. For each include name, gender, date of hire, date of attendance in the program, reason(s) why each person did not com-

plete the program and if training was extended. ·

Rowe Decl., Ex. 3.

Schwan's responded on December 13, 2007 with what it believed to be pertinent information.[2] Rowe Decl., ¶ 4(e); Rowe Decl., Ex. 4 (Response to Request for Information); Schwan's Mem., p. 6. The EEOC then served another Request for Information on December 19, 2007, asking for the following information to be provided by January 21, 2008:

1. Provide a copy of the investigation conducted regarding the complaints made by the charging party during her employment. If an investigation was not conducted, explain why not.

2. Provide documentation of the action taken against Jeff Moffis and George VanOverbeke for conduct and emails. If no action was taken against either or both of these individuals, please explain why a decision was made not to take action and provide supporting documentation.

3. Provide all documentation of additional feedback given to the charging party regarding her performance from February 19, 2007 to May 4, 2007.

4. Provide a copy of the charging party's personnel file.

5. Provide a list of General Manager's [sic] currently employed with the respondent. Include for each: the employee's name, gender and date of hire.

6. Explain how persons are selected for the GM Development Program and provide copies of all documents regarding the selection process.

---

**2.** While Schwan's did not object on relevancy grounds to these three requests, it only provided the EEOC with the following information: approximately 60 people began the GMDP course in 2007; Milliren was the only female not to successfully complete GMDP; Patricia Bakala, a female in Milliren's course, successfully completed the course; the names of eight individuals who failed to complete the GMDP course in 2007; everyone else who entered the 2007 GMDP course successfully completed it or was on track to do so; and in 2006, approximately the same number of people entered the GMDP course, but only two employees, both male, failed to complete it. Rowe Decl., Ex. 4.

7. Provide a list of all persons who successfully completed the GM Development program from 1/1/06 to the present by name, sex, date of hire, date of completion of program, current employment status, and last known home address and telephone number.

8. Provide a list of all persons whose training was extended from 1/1/06 to present by name, sex, date of program, date of extension, and reason for extension. Provide supporting documentation.

9. Charging party alleges that during her training in Boise, ID, a female applicant was denied a position by Jeff Moffis because she had children. State whether Mr. Moffis and the charging party interviewed candidates for a Customer Service Manager position and provide documentation regarding those interviews.

10. Charging party states that she complained to Jeff Moffis that a calendar containing a woman in a bikini was in the interview room. State whether this occurred and Mr. Moffis' response.

11. Provide a list of the charging party's mentors during her employment and provide the last known address and telephone number for each mentor.

Rowe Decl., Ex. 5 (EEOC's Request for Information to Schwan's). Apparently Schwan's did not respond, and consequently, the EEOC sent Schwan's a letter extending the date to February 8, 2008 for Schwan's to respond, and stating that if the EEOC did not receive the information by that date it may be compelled to issue a subpoena. Rowe Decl., ¶ 4(g); Rowe Decl., Ex. 6 (letter from EEOC to James B. Sherman dated January 28, 2008). On May 7, 2008, the EEOC served Subpoena

No. CHMN–A8–058 on Schwan's, seeking the same information sought in the December 19, 2007 Request for Information. Rowe Decl., ¶ 4(h); Rowe Decl. Ex. 7 (Subpoena No. CHMN–A8–058). On May 14, 2008, Schwan's responded with a Petition to Revoke or, in the Alternative, Modify Subpoena. Rowe Decl., ¶ 4(i); Rowe Decl., Ex. 8 (Petition to Revoke or Modify). The EEOC issued a Determination on Petition to Revoke or Modify Subpoena on July 28, 2008, in which it modified Request Nos. 8 and 11 and found the balance of Schwan's objections to be without merit and the subpoena to be valid. Rowe Decl., ¶ 4(j); Rowe Decl., Ex. 9 (Determination on Petition). The EEOC ordered Schwan's to respond to the modified subpoena. *Id.*

On August 12, 2008, Schwan's responded to Subpoena No. CHMN–A8–058. Rowe Decl., ¶ 4(k); Rowe Decl., Ex. 10 (Response dated August 12, 2008). Schwan's responded to Request Nos. 1, 3, 4, 8, and 9, found no documents responsive to Request Nos. 2 and 10, partially responded to Request No. 11, and objected to Request Nos. 5, 6 and 7 on the grounds that the information sought had no relation to the allegations contained in the Charge. *Id.* As of the date of the hearing, Schwan's had not provided the EEOC with all of the information requested. Rowe Decl., ¶ 4(*l*).

On January 31, 2009, Milliren amended the Charge, adding the following allegation:

> It is also my belief that the Respondent discriminates against females, as a class, in regard to its General Manager Development Program in violation of Title VII of the Civil Rights Act of 1964, as amended.

Rowe Decl., ¶ 4(m); Rowe Decl., Ex. 11, p. 2 (Amended Charge of Discrimination).[3]

---

**3.** At the hearing on the motion, the EEOC represented that it came to their attention that more investigation into class information was needed, and that Milliren was interested in amending the Charge.

On February 4, 2009, the EEOC served Schwan's with a Notice of the Amended Charge of Discrimination. Rowe Decl., ¶ 4(n); Rowe Decl., Ex. 11, p. 3 (Notice of Amended Charge of Discrimination). Schwan's responded on February 18, 2009, contending that the Amended Charge was untimely and invalid because the purported class claim alleging discrimination bore no relation to the allegations of the original charge, and therefore could not relate back to the initial charge for purposes of the statute of limitations. Rowe Decl., ¶ 4(o); Rowe Decl., Ex. 12 (response to Amended Charge).

On February 20, 2009, the EEOC served Schwan's with a second subpoena, Subpoena No. CHMN–A10–012, which requested the identical information sought in Request Nos. 5–7 of Subpoena No. CHMN–A8–058, previously served on and objected to by Schwan's:

1. Provide a list of General Managers currently employed with the respondent. Include for each: the employee's name, gender and date of hire.

2. Provide all documents related to how persons are selected for the GM Development Program.

3. Provide a list of all persons who successfully completed the GM Development program from 1/1/06 to the present by name, gender, date of hire, date of completion of program, current employment status, and last known home address and telephone number.

Rowe Decl., ¶ 4(p); Rowe Decl., Ex. 13 (Subpoena No. CHMN–A10–012).

Schwan's responded with a Request to Revoke or Modify on February 27,. 2009, which was rejected by the EEOC on August 4, 2009. Rowe Decl., ¶¶ 4(q) and 4(r); Rowe Exs. 14 (Petition to Revoke or Modify dated February 27, 2009) and 15 (Determination on the Petition dated August 4,

2009). Schwan's was directed to respond to the subpoena within ten days of the decision. Rowe Decl., Ex. 15. On August 10, 2009, Schwan's sent a letter to the EEOC, stating that it had not been provided with sufficient time to respond to the subpoena, it understood the Court would become involved, and it continued to disagree with the EEOC's position. Rowe Decl., ¶ 4(s); Rowe Decl., Ex. 16 (letter dated August 10, 2009).

On October 5, 2009, the EEOC filed the present motion, asking the Court to order Schwan's to comply with Subpoena No. CHMN–A10–012. [Docket No. 1].[4]

## II. STANDARD OF REVIEW

 "The EEOC is required to investigate a charge of discrimination to determine whether there is reasonable cause to believe that the employer engaged in an unlawful employment practice, 42 U.S.C. 2000e–5(b), and may issue subpoenas in connection with its investigation, 42 U.S.C. 2000e–9 (granting the EEOC the same investigative powers as those given to the National Labor Relations Board in 29 U.S.C. 161)." *EEOC v. Technocrest Systems, Inc.*, 448 F.3d 1035, 1038 (8th Cir. 2006). "The EEOC is entitled to 'any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by [Title VII] and is *relevant* to the charge under investigation.'" *Id.* (quoting 42 U.S.C. § 2000e–8(a)) (emphasis in original).

Congress has established the EEOC as the administrative body empowered to investigate violations of [Title VII] and has given the EEOC subpoena power in order to carry out its investigations. The authority to investigate violations includes the authority to investigate coverage under the statute. *Donovan v. Shaw*, 668 F.2d 985, 989 (8th Cir.1982). It can no longer be disputed that "a

---

4. The EEOC's first subpoena, issued on May 7, 2008, is no longer at issue.

subpoena enforcement proceeding is not the proper forum in which to litigate the question of coverage under a particular federal statute." *Id.* at 989. *See Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 214, 66 S.Ct. 494, 508, 90 L.Ed. 614 (1946); *Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943); *EEOC v. Roadway Express, Inc.,* 750 F.2d 40, 42 (6th Cir.1984); *EEOC v. Quick Shop Markets, Inc.,* 526 F.2d 802, 803 (8th Cir.1975). The initial determination of the coverage question is left to the administrative agency seeking enforcement of the subpoena. *Oklahoma Press,* 327 U.S. at 214, 66 S.Ct. at 508; *Endicott,* 317 U.S. at 509, 63 S.Ct. at 343; *Donovan,* 668 F.2d at 989; *Quick Shop Markets, Inc.,* 526 F.2d at 803. Often a coverage question cannot be resolved until the administrative agency has had an opportunity to examine the subpoenaed records. *Endicott,* 317 U.S. at 508–09, 63 S.Ct. at 343; *Donovan,* 668 F.2d at 989.

*EEOC v. Peat, Marwick, Mitchell & Co.,* 775 F.2d 928, 930 (8th Cir.1985), cert. denied, 475 U.S. 1046, 106 S.Ct. 1263, 89 L.Ed.2d 572 (1986).

 When the EEOC petitions a federal court to enforce a subpoena, it must demonstrate the following: (1) that the subpoena is within the agency's authority; (2) that the agency has satisfied its own procedural requirements; and (3) that the

information sought is relevant to its investigation. *EEOC v. Shell Oil Co.,* 466 U.S. 54, 72 n. 26, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984). In other words, "[i]f the EEOC shows that the investigation is for a legitimate purpose and the requested documents are relevant to the investigation, the EEOC is entitled to the documents subpoenaed unless the subpoenaed party 'demonstrates that judicial enforcement of the subpoena would amount to an abuse of the court's process.'" *Technocrest Systems, Inc.,* 448 F.3d at 1038–39 (quoting *Peat, Marwick, Mitchell & Co.,* 775 F.2d at 930–31). Accordingly, administrative subpoena enforcement actions are summary proceedings and involve limited judicial review. *Peat, Marwick, Mitchell & Co.,* 775 F.2d at 930–31; *EEOC v. Chrysler Corp.,* 567 F.2d 754, 755 (8th Cir.1977) ("The district court properly exercised its limited review of the relevance and materiality of the subpoena in ordering its enforcement.").

## III. DISCUSSION

The EEOC submitted that the subpoena was valid because Title VII investigations are within its authority, and the conduct alleged by Milliren—sexual harassment, retaliation for complaining about sexual harassment, and gender discrimination—violate Title VII. EEOC Mem., p. 9. The EEOC also argued that it had complied with all procedural prerequisites of the subpoena pursuant to 29 C.F.R. 1601.12[5]

---

**5.** 29 C.F.R. § 1601.12 states:

(a) Each charge should contain the following:

(1) The full name, address and telephone number of the person making the charge except as provided in § 1601.7;

(2) The full name and address of the person against whom the charge is made, if known (hereinafter referred to as the respondent);

(3) A clear and concise statement of the facts, including pertinent dates, constituting

the alleged unlawful employment practices: *See* § 1601.15(b);

(4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and

(5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment prac-

and 29 C.F.R. 1601.16.[6] *Id.* While Schwan's did not contend that the subpoena was procedurally deficient, it did object to it on several other grounds: the Amended Charge could not form the jurisdictional basis for the instant motion because it was untimely and Milliren had no standing to pursue a class action on behalf of the individuals the EEOC was seeking to vindicate; the Amended Charge was impermissibly vague and indefinite; the information sought by the EEOC was not relevant to the charge under investigation; and the EEOC's investigation was overly burdensome and an impermissible abuse of its investigative authority. Schwan's Mem., pp. 3, 22–23.

This Court first addresses the Schwan's various challenges to the Amended Charge, and then reaches the merits of relevancy arguments with respect to the information sought by the EEOC's subpoena.

### A. The Amended Charge

### 1. Is a Subpoena Enforcement Action the Proper Forum to Address Schwan's Amended Charge?

 As a preliminary matter, this Court concludes that this subpoena enforcement action is not the proper forum

for Schwan's to advance its arguments that Milliren's Amended Charge is not timely and cannot relate back to the original Charge, or that she lacks standing to assert claims on behalf of a class of women. "It can no longer be disputed that 'a subpoena enforcement proceeding is not the proper forum in which to litigate the question of coverage under a particular federal statute.'" *Peat, Marwick, Mitchell & Co.*, 775 F.2d at 930 (quoting *Donovan*, 668 F.2d at 989). "Thus, a court faced with a demand for enforcement is limited to determining whether the subpoenaed information is material and relevant to the investigation of a potential violation. To do otherwise would be to not only place the cart before the horse, but to substitute a different driver for the one appointed by Congress." (*Chrysler Corp.*, 567 F.2d at 755 (internal quotation marks and citations omitted)); *see EEOC v. Tempel Steel Co.*, 814 F.2d 482, 485 (7th Cir.1987) ("We therefore join those courts that have determined that a timeliness defense may not be raised to block enforcement of an EEOC subpoena.") (citations omitted); *Roadway Express, Inc.*, 750 F.2d at 42 ("A subpoena enforcement proceeding is a summary process designed to decide expeditiously whether a subpoena should be enforced. The proceeding is not the prop-

---

tice laws and, if so, the date of such commencement and the name of the agency. (b) Notwithstanding the provisions of paragraph (a) of this section, a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first re-

ceived. A charge that has been so amended shall not be required to be redeferred.

6. The relevant portions of 29 C.F.R. § 1601.16(a) state:

(a) To effectuate the purposes of title VII, the ADA, and GINA, any member of the Commission shall have the authority to sign and issue a subpoena requiring:

(1) The attendance and testimony of witnesses;

(2) The production of evidence including, but not limited to, books, records, correspondence, or documents, in the possession or under the control of the person subpoenaed; and

(3) Access to evidence for the purposes of examination and the right to copy.

er time to litigate the merits of a claim, either procedurally or substantively. A district court should only examine the substance of the EEOC's underlying claim if the opposing party can show that there is no factual or legal support for the agency's preliminary determination to investigate.") (citation omitted); *EEOC v. South Carolina Nat. Bank,* 562 F.2d 329, 332 (4th Cir.1977) (finding that the initial determination of the timeliness of a charge filed with the EEOC should be made by the EEOC). *See also EEOC v. City of Norfolk Police Department,* 45 F.3d 80, 83 (4th Cir.1995) (rejecting claim by defendant that "a timely filed charge" is "a prerequisite to EEOC investigative jurisdiction," and finding that "only that if 'there are no facts in dispute relating to the untimeliness of the charge,' if the charge *'shows on its face that it is untimely,'* and 'if the filing of the charge is *concededly out of time* or ... such is *otherwise apparent,'"* then "enforcement of a subpoena based on that charge should be denied.") (quoting *EEOC v. Ocean City Police Department,*

820 F.2d 1378, 1381, 1380, and 1383 n. 9 (4th Cir.1987) (emphasis added in *Norfolk* )).[7]

■ If and when Milliren sues Schwan's, Schwan's will have the opportunity to argue that her Amended Charge is untimely and cannot relate back to the original Charge, and that she lacks standing to assert class allegations. However, at this juncture, when the EEOC is still investigating the merits of her claims, Schwan's contentions are premature. *Chrysler Corp.,* 567 F.2d at 755.

### 2. Is the Amended Charge Timely?

Even if this Court were to conclude that this subpoena enforcement action was a proper forum for Schwan's to challenge the timeliness of the Amended Charge, this Court finds that the Amended Charge relates back to the original charge and is therefore, timely.

■ A charge of discrimination must be filed with the EEOC within 300 days after the alleged unlawful employment practice occurred pursuant to 42 U.S.C. § 2000e–5(e).[8] Milliren filed the Amended Charge

---

7. The Court notes that only a few courts have examined the objections of timeliness or standing to a charge of discrimination in the context of a subpoena enforcement action. *See Equal Employment Opportunity Commission v. Watkins Motor Lines, Inc.,* 553 F.3d 593, 596 (7th Cir.2009); *Equal Employment Opportunity Commission v. City of Norfolk Police Department,* 45 F.3d 80, 83–84 (4th Cir.1995); *Equal Employment Opportunity Commission v. Mississippi College,* 626 F.2d 477, 483–84 (5th Cir.1980). Instead, most courts that addressed the defenses of timeliness or lack of standing did so in the context of a pending lawsuit. *See e.g. National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 105–06, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Thompson v. North American Stainless, LP,* 567 F.3d 804, 809 n. 1 (6th Cir.2009); *Manning v. Chevron Chemical Co., LLC,* 332 F.3d 874, 878–79 (5th Cir.2003); *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services,* 165 F.3d 1321, 1327 (10th Cir.1999); *Fairchild v. Forma Scientific, Inc.,* 147 F.3d 567, 575 (7th Cir.1998);

*Anderson v. Block,* 807 F.2d 145, 148 (8th Cir.1986); *Hornsby v. Conoco, Inc.* 777 F.2d 243, 247 (5th Cir.1985); *Washington v. Kroger Co.,* 671 F.2d 1072, 1075–76 (8th Cir.1982); *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 107–08 (2d Cir.1978); *Davis v. Valley Hospitality Services, LLC,* 214 Fed.Appx. 877, 878–79 (11th Cir.2006); *Cameron v. Saint Francis Hosp. and Medical Center,* 56 F.Supp.2d 235, 239–40 (D.Conn.1999); *Webb v. Missouri Pacific R. Co.,* 95 F.R.D. 357, 361 (E.D.Ark.1982); *EEOC v. Rinella and Rinella,* 401 F.Supp. 175, 183 (D.C.Ill.1975); *Bell v. Columbia St. Mary's, Inc.,* 2009 WL 187935 at *2–3 (E.D.Wis. Jan.23, 2009).

8. 42 U.S.C. § 2000e–5(e)(1) provides for a filing deadline of 180 days unless an employee first initiates proceedings with a state or local agency, in which case the filing deadline is extended to 300 days. Here, Milliren filed the Charge with both the Minnesota Department of Human Rights and the EEOC. *See* Rowe Decl., Ex. 1.

on January 31, 2009, and relied on the same allegations from the original charge, which occurred between March 27, 2007 and May 4, 2007. As a result, because the Amended Charge was filed more than 300 days after the last allegedly discriminatory practice described in the Amended Charge, it is not timely. However, pursuant to 29 C.F.R. § 1601.12(b), the Amended Charge may be deemed timely if it relates back to the original charge.

> A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and *amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.*

29 C.F.R. § 1601.12(b) (emphasis added); *see Anderson v. Block,* 807 F.2d 145, 148 (8th Cir.1986) ("Assuming the additional act of discrimination asserted in her new charge *directly related to or grew out of the practices challenged in the prior charges,* [Complainant's] untimely administrative filing may be treated as an amendment to the earlier charges.") (citing *Washington v. Kroger Co.,* 671 F.2d 1072, 1075–76 (8th Cir.1982); (29 C.F.R. § 1601.12(b)) (emphasis added)). Accordingly, if the EEOC "in its investigation of an alleged unlawful practice turns up evidence of a type of discrimination other than alleged by the charging party, which the charging party includes in his amended charge and federal complaint, ... this additional type of discrimination is 'reasonably related' to plaintiff's original charge and, thus, relates back." *Cameron v. Saint Francis Hosp. and Medical Center,* 56 F.Supp.2d 235, 240 (D.Conn.1999). This "type of 'reasonably related' claim encompasses claims not raised in the charge where the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Id.* at 239 (quoting *Butts v. City of New York Dept. of Housing Preservation & Dev.,* 990 F.2d 1397, 1402 (2d Cir.1993)). As the Eighth Circuit observed in *Washington:*

> The fact that the second complaint filed with the EEOC alleges a basis for discrimination different from that alleged in the first EEOC charge is not dispositive here, where the aggrieved person is a non-lawyer who may be unaware of the true basis for the allegedly discriminatory acts until an investigation has been made. We agree with the District Court that procedural requirements should not be applied with an unrealistic or technical stringency to proceedings initiated by uncounselled complainants.

671 F.2d at 1076 (citations omitted).[9]

■ Here, the relevant inquiry is whether the new language in the Amended

---

**9.** The Court recognizes courts around the country have reached different results as to whether claims premised on different legal theories that stem from the same set of operative facts stated in the original charge relate back to the original charge. *See Simms,* 165 F.3d at 1326–27 ("Some courts have held that this language encompasses claims based on different legal theories that derive from the same set of operative facts included in the original charge..... Other courts have concluded that an amendment will not relate back when it advances a new theory of recovery, regardless of the facts included in the original complaint.") (citations omitted); *see also (Manning,* 332 F.3d at 877–78) (discussing cases that stand for the proposition that "amendments that raise a new legal theory do not 'relate back' to an original charge of discrimination."). The *Simms* court cited *Washington, supra* among those courts that permitted an amended charge which asserted a new legal theory to relate back to an original charge if the theories shared the same set of operative facts stated in the original charge. *165 F.3d 1321, 1326–27.*

Charge—"It is also my belief that the Respondent discriminates against females, as a class, in regard to its General Manager Development Program"—constitutes unlawful employment practices related to or growing out of the subject matter of the original Charge. The Court finds that it does.

The claim of being discriminated against as an individual based on gender in connection with the GMDP is not disparate to the claim of being discriminated against as a class based on gender in connection with this same program.[10] It is entirely conceivable that the investigation of the original Charge of gender discrimination would potentially implicate gender discrimination across a class of people. Indeed, in the original Charge, Milliren alleged that she was harassed, demoted, and informed that she would not graduate from the GMDP. In support, she stated that Moffis, the Local General Manager, addressed her as "woman" two times; he laughed at her when she informed him that she was not comfortable with him and customer service managers joking around about offensive material that had been emailed to local general managers by George VanOverbeke, District Manager; and after she complained to Jim Pettry, facilitator, and her direct supervisor, Sue Beary, Vice President of Business Initiatives, about the derogatory emails, she was told by Mike Wells, Director of Training, that she was

not demonstrating leadership skills, she would not graduate from GMDP, and that the best position they could offer her upon completion of the program was that of a customer service manager. During the course of its investigation of her Charge, Milliren indicated that while interviewing applicants for a Customer Service Manager position, Moffis had identified a female applicant who he said was not suitable for the position because she would be leaving three children at home; Milliren and Patty Bakala were the only female participants in the GMDP at the time; Beary told Bakala to "act more like the boys" to improve her performance; and during her initial interviews with Schwan's, Beary told Milliren that if she successfully completed the GMDP, she would be the second female of approximately five hundred Local General Managers at Schwan's nationwide.

In short, during the course of the investigation of the Charge, support was developed to suggest that the disparate treatment allegedly experienced by Milliren was not confined to her, and that it impacted not only the performance and graduation of her and other women from the GMDP, but possibly selection into the program as well. Milliren did not seek to add claims of unrelated discrimination, such as discrimination based on race or disability, but rather indicated in her Amended Charge that the sex discrimination she had

---

10. Schwan's attempted to contend that the Amended Charge could not relate back to the original Charge because the addition of discrimination against females as a class did not clarify and amplify a charge that only alleged two instances of alleged sexual harassment and retaliation for complaining about it. Schwan's Mem., p. 19. Stated otherwise, retaliation for complaining about harassment is different from systemic discrimination on the basis of sex. *Id.* Schwan's misread Milliren's original Charge. Not only did the Charge plainly state that she believed she was discriminated against on the basis of her sex, she

placed an "X" in the box next to "retaliation" and another "X" in the box next to "sex" in the section of the Charge of Discrimination titled "Discrimination Based On (Check appropriate box(es).)." *See* Rowe Decl., Ex. 1. In any event, Schwan's contention that Milliren did not claim sex discrimination in her Charge is belied by the fact that Schwan's addressed the gender discrimination claim in both its position statement in response to the Charge, and its Petition to Revoke or Modify the EEOC's Subpoena. Rowe Decl., Ex. 2, pp. 2, 6–8, Ex. 8, p. 14.

experienced was experienced by other women. On these facts, this Court concludes that there is a sufficient nexus between the original Charge and the new allegations of class discrimination in the Amended Charge to constitute a like or related charge. *See Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 575 (7th Cir.1998) (observing that "a person who originally charged she was not promoted based on her sex could amend her complaint to allege that later she was fired on the basis of her sex. These are two acts, failure to promote and termination, which grow out of the subject matter of the original charge: sex discrimination."). The Amended Charge directly related to or grew out of the practices challenged in the Original charge and relates back to the date the original Charge was first received.

### 3. Does Milliren Have Standing to Standing to Pursue a Class Action?

 Schwan's also contended that the EEOC had no authority to pursue investigation of the Amended Charge because Milliren had no standing to pursue a class action on behalf of the individuals the EEOC is seeking to vindicate. This argument is meritless. First, this subpoena enforcement proceeding is not the proper forum to assert this challenge. Second, the cases relied upon by Schwan's for its challenge to standing (*see* Schwan's Mem. pp. 19–20), have no application here, as they address standing with respect to class action litigation, not with respect to filing a charge with the EEOC. With regard to standing to file a charge with the EEOC, "[i]t is unquestioned that a discrimination charge may be filed with EEOC by any person claiming to have been discriminated against *or by others on behalf of any aggrieved person.*" *Webb v. Missouri Pacific R. Co.*, 95 F.R.D. 357, 361 (E.D.Ark. 1982) (emphasis added). *See also EEOC v. Bailey Co., Inc.*, 563 F.2d 439, 454 (6th Cir.1977) ("Under the EEOC's interpretation of Title VII, whites are aggrieved by discrimination against blacks at their place of employment and have standing to file charges with the EEOC and sue in court."); *Mississippi College*, 626 F.2d at 482–83 (finding a white woman had standing to file a charge with the EEOC asserting that defendant discriminated against blacks because "of her own personal right to work in an environment unaffected by racial discrimination;" court refused to opine in this subpoena enforcement suit on plaintiff's "adequacy as a class representative for any blacks against whom the College may have discriminated."); *EEOC v. Rinella and Rinella*, 401 F.Supp. 175, 183 (N.D.Ill.1975) (organization concerned with rights of women employees had standing to file employment discrimination charges with the Equal Employment Opportunity Commission on behalf of discharged female employee and other similarly situated women). Accordingly, Milliren has standing to pursue a charge on behalf of a class.

### 4. Is the Amended Charge Impermissibly Vague and Indefinite?

 Schwan's argued that the Amended Charge was impermissibly vague and indefinite. Schwan's Mem., pp. 22–23. This Court finds otherwise. 29 C.F.R. § 1601.12(a) requires "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." Under 29 C.F.R. § 1601.12(b), a "charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Furthermore, "a charge of employment discrimination is not the equivalent of a complaint initiating a lawsuit. The function of a Title VII charge, rather, is to place the EEOC on

notice that someone (either a party claiming to be aggrieved or a Commissioner) believes that an employer has violated the title." *Shell Oil Co.,* 466 U.S. at 68, 104 S.Ct. 1621.

 Here, the Amended Charge generally set forth that Milliren believed that Schwan's discriminated against females in regard to the GMDP. The allegation is confined to one class of people with respect to one specific program at Schwan's. The Amended Charge arguably does not include specific dates of any alleged class discrimination within the allegations, but it may be reasonably inferred from the Amended Charge as a whole that the alleged class discrimination occurred during the same timeframe that the individual discrimination against Milliren allegedly occurred—February 2006 to May 2007—given Milliren's statement that it was her belief that Schwan's discriminated against females as a class with regard to the GMDP, and that was the time she participated in GMDP. Additionally, there is a section of the Charge of Discrimination form titled "Date(s) Discrimination Took Place," Milliren entered March 27, 2007, as the earliest date, and May 4, 2007, as the latest date. *See* Rowe Decl., Ex. 11. This Court finds that the information contained in the Amended Charge was sufficient to put Schwan's on notice of the claims against it.

**B. *Does the Subpoena Seek Information Relevant to the Amended Charge?***

 The Court has determined that the first two elements necessary for enforcement of the subpoena have been satisfied: it was within the authority of the EEOC to issue the subpoena and the EEOC followed the procedural requirements set forth in 29 C.F.R. § 1601.16. The Court further has ascertained that the Amended Charge is the operative charge

against which this Court now must determine whether the information sought by the subpoena is relevant to the EEOC's investigation of the claims set forth in the charge—*i.e.* that Schwan's demoted Milliren and did not allow her to graduate from the GMDP on the basis of her sex and in retaliation for having complained about harassment based on sex, and that Schwan's discriminated against females, as a class, in regard to its GMDP. *See* Rowe Decl., Ex. 11 (Amended Charge of Discrimination).

> The EEOC is entitled to 'any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by [Title VII] and is *relevant* to the charge under investigation.' 42 U.S.C.2000e–8(a). Since the enactment of Title VII, courts have generously construed the term 'relevant' and have afforded the [EEOC] access to virtually any material that might cast light on the allegations against the employer. *EEOC v. Shell Oil Co.,* 466 U.S. 54, 68–69, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984) ... If the EEOC shows that the investigation is for a legitimate purpose and the requested documents are relevant to the investigation, the EEOC is entitled to the documents subpoenaed unless the subpoenaed party "demonstrates that judicial enforcement of the subpoena would amount to an abuse of the court's process." *EEOC v. Peat, Marwick, Mitchell & Co.,* 775 F.2d 928, 930–31 (8th Cir.1985).

*Technocrest,* 448 F.3d at 1038–39 (emphasis in original). Furthermore, the Supreme Court has instructed "it is crucial that the [EEOC's] ability to investigate charges of systemic discrimination not be impaired." *Shell Oil Co.,* 466 U.S. at 59, 104 S.Ct. 1621. "The allegations contained in the charge do not narrowly circumscribe the Commission's investigation. Rather,

the charge serves as a 'jurisdictional springboard' enabling the Commission 'to investigate whether the employer is engaged in any discriminatory practices.' " *EEOC v. Astra U.S.A., Inc.,* 94 F.3d 738, 746 (1st Cir.1996) (quoting *EEOC v. Huttig Sash & Door Co.,* 511 F.2d 453, 455 (5th Cir.1975)). "So viewed, the charge is capable of supporting an EEOC investigation into both the discrimination described in the charge itself and into the surrounding circumstances (including a full probing of any evidence of discriminatory practices unearthed during the course of the initial investigation)." *Id.* (citing *EEOC v. General Elec. Co.,* 532 F.2d 359, 366 (4th Cir. 1976)). "It follows that the EEOC's investigation of a charge is not confined to the four corners of the charge so long as it is reasonably tethered by relevance to the charge and in good faith." *EEOC v. Von Maur, Inc.,* 2007 WL 3503435 at *3 (S.D.Iowa Oct. 22, 2007). In sum, "[w]hile the EEOC's access to evidence in furtherance of its duty to investigate a discrimination charge is not without limitation, a district court should enforce an administrative subpoena if the information sought is reasonably relevant to an authorized investigation." *Technocrest,* 448 F.3d at 1040 (citations omitted); see also *EEOC v. United Parcel Service,* 2006 WL 3712941 at *3 (D.Minn. Sept. 1, 2006). ("The EEOC may investigate all claims that are 'like or related' to the acts set forth in the charge.").

 Applying these principles to the EEOC's subpoena, the Court finds that the information sought by the subpoena is relevant to the Amended Charge. Subpoena No. CHMN–A10–012 asked for the following information:

1. Provide a list of General Managers[11] currently employed with the respondent. Include for each: the employee's name, gender and date of hire.

2. Provide all documents related to how persons are selected for the GM Development Program.

3. Provide a list of all persons who successfully completed the GM Development program from 1/1/06 to the present by name, gender, date of hire, date of completion of program, current employment status, and last known home address and telephone number.

According to the EEOC, information obtained from Request Nos. 1 and 3 would provide it with evidence to determine whether Schwan's discriminates on the basis of gender in hiring or promoting applicants into the Location General Manager positions through the use of GMDP. EEOC's Mem., p. 13. This Court agrees. Examination of the gender breakdown of the current Location General Manager population is relevant to Milliren's claim that she was told that had she been hired, she would have been the only second female Location General Manager nationwide. Additionally, the information regarding the current Location General Manager population, along with the requests seeking information regarding the selection process into the GMDP, and a list of those successfully completed the GMDP to the present and their current employment status, would permit the EEOC to investigate and evaluate whether gender discrimination is occurring at Schwan's because of the GMDP and shed light on whether Schwan's has persisted in a pattern of discrimination across a class of people. All of this information bears on

11. The Court presumes the phrase "General Managers" is synonymous with the phrase "Location General Managers" and thus, uses that term in this decision. Accordingly, Schwan's shall provide to the EEOC the requested information for the Location General Managers currently employed by it.

the "related question of whether the discrimination against Milliren was replicated by [Schwan's] against a class of women in the GMDP." EEOC Mem., p. 13.

As the EEOC explained:

The allegedly discriminatory employment practice at issue, the GMDP, is used to prepare candidates to become Location General Managers at SHS facilities nationwide. (Rowe Decl., Ex. 2 at 2, n. 2) Completing the GMDP is prerequisite to obtaining a General Manager position at any SHS location nationwide. Therefore, examining the gender breakdown of SHS's current General Manager population is a highly relevant to evaluating whether gender discrimination is occurring in the SHS workforce because of the GMDP.

EEOC Mem., p. 15. Further, as the EEOC stated at the hearing, an examination of Milliren's comparators involves discovering how they got into GMDP, how they were treated, and if and when they were hired as Location General Managers after graduation from the program. *See EEOC v. Federal Exp. Corp.,* 558 F.3d 842, 855 (9th Cir.2009) (where EEOC was investigating a charge alleging systemic discrimination affecting African American and Latino employees in an eleven-state region, asking FedEx to identify what computerized personnel files it had maintained constituted relevant information that afforded the EEOC an opportunity to determine what material might cast light on the allegations against the employer); *Technocrest,* 448 F.3d at 1039–40 (where EEOC sought, among other things, work history information for all employees, court found that because the charging parties alleged class-wide national-origin discrimination, the files for all employees— who were hired at different times, worked in different locations and worked for different supervisors—were relevant to a determination of whether Technocrest ille-

gally discriminated on the basis of national origin); *EEOC v. Roadway Exp., Inc.,* 261 F.3d 634, 638–39 (6th Cir.2001) (where charge alleged failure to hire women as operators and laborers and the failure to promote blacks to sales and upper management positions, information requested by EEOC regarding the promotion of women to sales and upper level management positions and the hiring of blacks as operators and laborers was relevant to the EEOC charge because "[t]he employer's pattern of action provides context for determining whether discrimination has taken place."); *EEOC v. Bay Shipbuilding Corp.,* 668 F.2d 304, 311 (7th Cir.1981) (EEOC's request for information regarding company's advertisements and help-wanted ads upheld because an "employer's method of recruitment and job advertisement may serve to determine whether the employer has discriminated against women in hiring for positions in the electrical department, thereby discouraging women already employed from applying or transferring to those positions."); *EEOC v. Packard Elec. Div.,* 569 F.2d 315, 318 (5th Cir.1978) (when investigating individual complaint, district court may enforce company-wide subpoena if EEOC has presented evidence of relevancy of company-wide data); *Joslin Dry Goods Co. v. Equal Employment Opportunity Commission,* 483 F.2d 178, 183–84 (10th Cir.1973) (allegation of wrongful discharge sufficient to justify investigation of employment practices as to hiring as well as firing); *Blue Bell Boots, Inc. v. EEOC,* 418 F.2d 355, 358 (6th Cir.1969) (determining EEOC entitled to evidence focused on the existence of patterns of racial discrimination in job classifications or hiring situations other than those that the charge specifically targeted); *Von Maur, Inc.,* 2007 WL 3503435 at *4–5 (EEOC subpoena seeking names of all successful and unsuccessful applicants for a position was valid because it could "cast light" on complainant's allega-

tions; court opined that if there was a pretext for discrimination in complainant's case, it was "reasonable to believe the same pattern would evince itself elsewhere"); *United Parcel Service,* 2006 WL 3712941 at *3 (individual filed charge with EEOC alleging disability discrimination in Minnesota UPS facility and EEOC subpoenaed information related to whether UPS maintained a blanket exclusionary policy against certain disabled applicants and employees; court found that the information sought regarding UPS' nationwide policy was relevant even though the claim was brought by an individual alleging disability discrimination in Minnesota facility); *EEOC v. Lakeside Bldg. Maintenance, Inc.,* 255 F.Supp.2d 871, 873 (N.D.Ill.2003) (during investigation of individual national origin complaint, EEOC expanded investigation to discover whether there was a general pattern of discriminatory hiring and job assignment; court upheld subpoena seeking interviews with several managers an employees after individual complainant settled her claim).

With regard to Request No. 2, the EEOC stated that the information would provide it with evidence to determine whether Schwan's uses unlawful criteria to select participants for the GMDP program, and how it evaluates the qualifications of applications. EEOC's Mem., p. 13. The EEOC also asserted that this selection information was highly relevant because it involves the same program Milliren claimed was used to discriminatorily deny employment to women. EEOC's Mem., pp. 15–16. In response, Schwan's argued that because Milliren's charge did not take issue with her selection into GMDP, and further, the Charge contained no allega-

tion that Milliren was not selected for participation in the GMDP based on her gender, the EEOC's request for information regarding the selection process for GMDP is irrelevant. Schwan's Mem., pp. 6–7, 12.

The Court finds the information sought by Request No. 2 relevant because Milliren's claims were driven by all circumstances of her employment. Although Milliren was selected into the GMDP, and the facts stated in her original Charge were confined to actions she experienced after she was in the program, the selection process has bearing on the gender discrimination allegations surrounding the GMDP, and whether the selection process played a role in so few women graduating from the program and going on to become a Location General Manager. If Schwan's engaged in gender discrimination in the GMDP, the relevant information cannot be limited solely to the acts of discrimination once an employee was in the program; it also necessarily encompasses the criteria and selection for selection and acceptance into that program.

The EEOC's subpoena did not amount to a fishing expedition. It was designed to examine facts bearing on the GMDP program. To the extent that the subpoena requests personal information of Schwan's current Location General Managers and GMDP graduates, gender is the only protected classification about which the EEOC is seeking to examine. The EEOC's subpoena does not appear to be a pretext for searching for types of discrimination beyond gender or retaliation. The information sought by the subpoena is related to the information contained in the charge.[12]

---

12. In its opposition memorandum, Schwan's argued that Request Nos. 5–7 were burdensome. "The level of undue burden necessary to excuse compliance with a subpoena must be such that compliance would affect the company's normal operating costs and unduly disrupt or hinder normal business operations." *United Parcel Service,* 2006 WL 3712941 at *3 (citing *EEOC v. Maryland Cup Corp.,* 785 F.2d 471, 479 (4th Cir.1986)), *cert. denied,* 479 U.S. 815, 107 S.Ct. 68, 93 L.Ed.2d 26 (1986); *EEOC v. A.E. Staley Manufactur-*

## IV. CONCLUSION

The Court finds that the amended charge is valid and within the authority of the EEOC. The information sought in Subpoena No. CHMN–A10–012 is relevant to the Amended Charge. Accordingly, the Court orders that the subpoena be enforced in its entirety.

ing Co., 711 F.2d 780, 788 (7th Cir.1983); *Bay Shipbuilding Corp.*, 668 F.2d at 313. Moreover, it is axiomatic that "[t]he party opposing discovery bears the burden of showing that the discovery request is overly broad and burdensome by alleging facts demonstrating the extent and nature of the burden imposed by preparation of a proper response." *Sinco, Inc. v. B & O Mfg., Inc.*, No. 03–5277(JRT/FLN), 2005 WL 1432202 at *2 (D.Minn. May 23, 2005) (citing *Mead Corp. v. Riverwood Natural Res. Corp.*, 145 F.R.D. 512, 515–16 (D.Minn.1992)); *see also Wagner v.*

*Dryvit Sys. Inc.*, 208 F.R.D. 606, 610 (D.Neb. 2001) (holding that "an objection that discovery is overly broad and unduly burdensome must be supported by affidavits or offering evidence revealing the nature of the burden and why the discovery is objectionable. It is not sufficient to simply state that the discovery is overly broad and burdensome...."). Here, Schwan's provided this Court with no evidence to support its bald assertion that responding to these requests was too burdensome.